## Case No. 16,147.

### UNITED STATES v. RENDELL.

[1 Curt. 369.] 1 .

Circuit Court, D. Massachusetts. May Term, 1853.

CUSTOMS DUTIES—COLLECTION LAWS—REPORTING ARRIVAL TO COLLECTOR.

Under the 30th section of the collection act of 1799 (4 Stat. 649), if the master make report of arrival, he is not liable to the penalty, though he do not repair to the office of the principal officer of customs for that purpose.

This was a writ of error to the district court of the United States for the district of Massachusetts, bringing up the record of an information filed by the district-attorney against [Benjamin] Rendell, as master of the American brig Nithroy, for not making report, within twenty-four hours, of the arrival of the brig at the harbor of Holmes's Hole, in the district of Massachusetts, from a foreign voyage, pursuant to the act of March 2, 1799. At the trial of the information in the district court, there was a verdict of not guilty [case unreported], and the following bill of exceptions was taken by the district-attorney.

"At the trial of this cause before the jury, the United States, by George Lunt, their attorney, claimed that the defendant was liable to forfeit and pay the sum of one thousand dollars, penalty, for neglecting and omitting to comply with the provisions of the thirtieth section of the statute of the United

1 [Reported by Hon. B. R. Curtis. Circuit Justice.]

States, approved March 2, 1799, entitled 'An act to regulate the collection of duties on imports and tonnage;' which section provides, 'that, within twenty-four hours after the arrival of any ship or vessel from any foreign port or place, at any port of the United States established by law, at which an officer of the customs resides, or within any harbor, inlet, or creek thereof, if the hours of business at the office of the chief officer of customs at such port will permit, or as soon thereafter as the said hours will permit, the master, or other person having the charge or command of such ship or vessel, shall repair to the said office, and shall make report to the chief officer of the arrival of the said ship or vessel.' The defendant was master of a certain vessel called the brig 'Nithroy,' which arrived from a foreign voyage into the harbor of Holmes's Hole, in the collection district of Edgartown, at or about 9 o'clock, p. m., on the 14th day of February, in the year 1851. From this harbor she departed towards her port of final destination in the evening of the 17th day of the same month. At this harbor of Holmes's Hole, there resided one Henry P. Worth, who was, and had been for a long time, the deputy of the collector of Edgartown, and an inspector of the customs, by him appointed. He was the only officer of the customs there resident, and had no clerk, and acted himself also as boarding-officer, under the provisions of the 25th section of the same act. He had an office in one of the chambers of his dwelling-house, but no person was there to act for him when absent. Over the principal door of his house was the sign, 'Custom-House'; and there was evidence offered by the government, tending to prove that upon the outside of the door of the office within, was posted a written notice of business hours, viz.: 'Office-hours from 9 a. m. to 12 m., and from 2 p. m. to 4 p. m.;' and that he had such hours. There was evidence on the other side, tending to prove that he had no such hours. Evidence was given to show that, at this harbor of Holmes's Hole, many vessels, perhaps three thousand sail in the course of each year, were boarded by Mr. Worth; that five hundred of them at least would be under a foreign register; that he was absent from his office a great, and perhaps the principal, part of the time, in discharge of his duties as boarding-officer; but that he was always there when he had reason to expect that any business was to be done. During the period while the Nithroy lay at Holmes's Hole, so far as known to the officer, neither the defendant, nor any other person having charge or command of the vessel, made the report required by the act, at the office before described. The defendant, to maintain the issue on his part, gave evidence that Mr. Worth went on board the Nithroy, upon her arrival; was there informed by the master of the place whence she came, and of the time of her arrival, and that he also received a copy of the manifest, and made a certificate on the original; and it appeared, that for more than thirty years last past, not more than one in thirty had ever made, or been required to make, any other report of arrival. Evidence, also, was given, tending to prove that it was the custom and practice of Mr. Worth to board all vessels immediately upon their arrival at that port under a foreign register, and to receive the report of their arrival on board, and sometimes he informed masters that he required no other report, unless they remained there over forty-eight hours. Upon the exhibition of this evidence, the United States contended that the penalty provided by the statute was incurred by the defendant. But the judge instructed the jury, that, if the officer of the customs actually transacts the business of receiving the report of arrival at any place within his district, such place must be considered as adopted by him, and that he has discontinued or changed for the time any other office which he may heretofore have had; so that he either has no office to which the master can then repair and make the report, or that his office for that purpose is at the place where he actually transacts the business, by personally receiving the report; and especially must this be so, when that is the place where the officer has been in the practice of transacting that business for at least thirty years;" and that the report which was actually made, accomplished all the purposes of the law, and a further report merely of the arrival would have been utterly useless. Whereupon the United States, by their attorney as aforesaid, excepted to these instructions of the judge, and asked that their exceptions might be allowed; and they are allowed accordingly. P. Sprague, Judge.

"A true copy of record. Attest: S. E. Sprague, Clerk.

"A true copy of the bill of exceptions. Attest: H. W. Fuller, Clerk of the Circuit Court U. S. Mass. Dis."

Mr. Lunt, U. S. Dist. Atty.

CURTIS, Circuit Justice. It is not denied that in this case a report of the arrival of the vessel was made by the master, to the only officer of customs resident at the place of arrival, or that this report was made within the prescribed time, and contained all the required particulars. The objection is, that it was not made at the right place; that the act imperatively requires the report to be made, at the office of the principal officer of the customs; and that the penalty is to be inflicted upon the master, if it be made elsewhere. The act undoubtedly directs the master to repair to the office of the chief officer of the customs, as well as to make report; but it does not necessarily follow, that it inflicts a penalty upon the omission to repair thither. The penal clause applicable to this case, is as follows: "And if the master, or the person having the command of

such vessel, shall neglect or omit to make the said report, or shall not fully comply with the true intent and meaning of this section, as the case may be, he shall, for each and every offence, forfeit and pay the sum of one thousand dollars." 1 Stat. 649–651. It is to be considered, then, whether it was the intention of congress to impose a penalty only upon the omission to make the required report, or also upon the omission to repair to the office of the principal officer of customs to make it. And in the first place, it is to be observed, that in terms, it is only the omission to make the said report, or fully to comply with the true intent and meaning of the section, which renders the master liable to the penalty. And if, in point of fact, he do not omit to make the report, the only question would seem to be, whether he has not fully complied with the true intent and meaning of the section, by making the required report at a place within the port, where the officer actually received it. It is somewhat remarkable, that among all the acts required to be done by masters of vessels, in the way of reports and otherwise, there is no other case, under this statute, in which express mention is made of doing an act, at the office of the principal officer of the customs. Thus, in the 19th section, vessels bound to ports of delivery, are required to come to, at the port of entry of the district, "and there make report and entry in writing," &c. And so in very many other cases, the act is required to be done at the port, but not at any particular office. Nor do I find that the statute requires the principal officers to keep one stated and fixed place as and for an office. The 21st section directs them to attend in person at the ports to which they are respectively assigned, but does not make it necessary for them to transact their business at any one place therein. Undoubtedly, this section under consideration implies an expectation on the part of congress, that the officer will have an office, as it does that he will have stated hours for business, but it makes no requisition to that effect, and leaves both these particulars to be regulated by the executive. And whether the officer shall have one fixed place, or several different places, for the transaction of his business, is manifestly a matter entirely beyond the control of masters of vessels, arriving from foreign ports, who must make the reports to the officer, where he chooses to be found and to receive them. Moreover, if the required report is in fact made in person to the proper officer, and is received by him, the substantial purpose of the law is answered. It might tend to produce somewhat more regularity and exactness, to have these reports made and received at a stated office; but to secure these, cannot be considered as forming a substantial part of the purpose of a law, which does not even require such an office to be kept, but leaves them to be secured by proper regulations of the treasury department, the head of which has ample powers for that purpose.

I am strongly inclined to think, that what is said in this section concerning repairing to the office, was designed for the relief of masters, by affording them, in some cases, an excuse for not making a report, and to limit more distinctly their obligation to do so, rather than to impose upon them the necessity, in all cases, of repairing thither. It exempts the master from the necessity of looking elsewhere for the officer. But however this may be, I am of opinion, that if the master does make the required report, in due season, to the proper officer, who receives it, he is not liable to the penalty for omitting to repair to the office, because for this last omission, the act does not in terms impose a penalty, and because the master has, on his part, fully complied with the true intent and meaning of the act, by doing all that is needful to answer its purpose; the clause respecting his repairing to the office, being directory merely, and not intended to compel him to go thither, if the business can be, and in fact is, completely done elsewhere, within the port.

For these reasons I am of opinion, that there was no error in the judgment; for though the court below, apparently for the purpose of submitting a question of fact to the jury, took a somewhat different view of the act, the substantial result arrived at was, that a report, seasonably made to the officer, at the port, and received by him, was a compliance with the act. The judgment is, therefore, affirmed.